PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* JOSÉ RAMÓN FREYRE, d/b/a FONTÁNEZ BAKERY, Defendant.

No. JRT-62-4.   Decided March 29, 1963.

*J. B. Fernández Badillo, Solicitor General, José Orlando Grau,* and *J. F. Rodríguez Rivera* for petitioner. *José Ramón Freyre* for defendant.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

PER CURIAM.

In December 1959, Union No. 1 of Bakers, Confectioners and Subsidiary Branches of Puerto Rico, F.L.T., filed a charge [1] before the Puerto Rico Labor Relations Board against employer José Ramón Freyre, doing business as Fontánez Bakery, alleging that defendant had engaged in an unfair labor practice in violating the provisions of § 8(1) (f)

---

[1] The charge reads as follows:
   "From and after August 1, 1959 defendant has violated the terms of the collective agreement in force by refusing to comply with the

of the Puerto Rico Labor Relations Act—29 L.P.R.A. § 69(1)(f). In July 1960, under the authority conferred by § 9(1)(a) of that Act—29 L.P.R.A. § 70(1)(a)—petitioner notified defendant of the complaint and hearing to be held.

In March 1961 the trial examiner submitted his report and in October of that year the Board issued its Decision and Order 257. In January 1962 the validity of such Decision and Order was assailed before this Court. Petitioner withdrew the Decision and Order, without prejudice, and two months later it issued its Second Decision and Order.

On April 30, 1962 the Board urged this Court to enforce the Second Decision and Order. On the following May 23 defendant petitioned for a "Writ of Review" which we considered as a showing of cause of defendant.

Defendant acquired the Fontánez Bakery by purchase from Mr. Fontánez on July 4, 1959. On August 1 of that year defendant signed a stipulation with the Union which represents the laborers who work in his business. The stipulation reads as follows:

"1. The employer hereby agrees to comply with all the provisions of the Collective Agreement signed by Juan Fontánez, former employer of the bakery and confectionery 'Fontánez Bakery,' which has been in force from January 30, 1957 to the same day of January 1958 and has been extended by the parties for one additional year, namely, until January 30, 1960 [sic], and thereafter from year to year, unless one of the parties gives written notice sixty (60) days in advance of the expiry date of its desire to amend or to negotiate a new agreement."

The employer alleges as special defense that the stipulation copied has no validity because at the time he acquired

provisions of Art. XII thereof requiring it to pay contributions toward a 'Hospitalization and Ambulatory Plan.'

"From and after February 16, 1960 respondent has violated Arts. VI and XIV of the said agreement by refusing to deduct and to deliver to complainant Union the dues of his employees, and has further refused to settle these differences before the Complaint and Grievance Committee."

the business and signed the stipulation the agreement entered into between the Union and the former employer was not in force. He bases his contention on the interpretation of the effectiveness clause of that agreement.

We need not consider the said effectiveness clause nor determine whether or not the agreement was in force at the time the stipulation was signed. The important point to bear in mind is the provision of the stipulation to the effect that "the employer hereby binds himself to comply with all the provisions of the collective agreement signed by the former owner of the bakery and confectionery Fontánez Bakery." When the stipulation was signed a new agreement arose between the Union and the new employer. The intention was clearly to establish a contractual relationship to govern the relations between the Union and the employer. The stipulation created a relationship the elements and conditions of which were, by adoption, the same as those of the former agreement. It would be most unfair for the Union if, six months after signing the stipulation, the employer would assume the position that the stipulation was not valid alleging that the former agreement was not in force. The stipulation gave it effectiveness. The employer's action in signing prevented the Union from initiating immediately negotiations to make a new collective agreement. The employer could not lead the Union to believe that he was operating under an agreement so that, upon failure to comply therewith, the employer could raise the defense that there was no such agreement.

The employer having agreed to continue operating under the terms of the former agreement, he was bound to comply with all its provisions, including that providing for the medical services required by the agreement. The agreement provided that the employer would furnish such service, so that Fontánez was bound to comply. The contract for medical services was merely the way of implementing the

obligation contracted under Art. XII of the agreement which provided as follows:

"The employer agrees with the Union to provide hospitalization and ambulatory services to all the employees who form part of the contracting Union; Provided, that the plan shall not exceed $2.75 monthly for each worker hired by the employer. Since the plan of Clínica Dr. Seín is the plan chosen by the parties to be carried out immediately after this agreement is signed, the employer agrees to enter into the corresponding contract with the director and representative of the Clinic for these purposes. The plan shall be in force during the entire duration of this agreement."

The employer raises an additional defense consisting in imputing fraud to the president of the Union in the sense that in the stipulation signed it was set forth that the effectiveness clause of the former agreement could be automatically renewed, and that in that understanding the employer signed the stipulation; that when he examined the agreement closely, he reached the conclusion that the effectiveness clause did not have the scope attributed by the president of the Union. We have already stated that for the purposes of the stipulation signed the interpretation of the effectiveness clause is immaterial, since the employer expressly agreed to continue operating in accordance with the stipulations contained in the agreement, regardless of whether or not it was in force.

The petition seeking enforcement of the order of the Board will be granted.